## McCabe *v.* Illinois Cent. R. Co.

*(Circuit Court, N. D. Iowa.* April, 1882.)

FOREIGN CORPORATIONS—NON-RESIDENTS—STATUTE OF LIMITATIONS.

A foreign corporation that by the laws of a state within which it comes on business can sue and be sued. is not a *non-resident* in the sense that would prevent it from setting up the statute of limitations as a defense in an action against it; and section 2533 of the Code of Iowa, that provides that "the time during which a defendant is a non-resident of the state shall not be included in computing the period of limitation," has no reference to such a case.

This is an action for personal injuries. The defendant is an Illinois corporation. It appears that the cause of action accrued more than two years before the commencement of the suit. The defendant pleads the Iowa statute of limitations, which provides that "actions founded on injuries to the person or reputation, whether based on contract or not, or for a statute penalty, shall be commenced within two years after their causes accrue." This provision is qualified by section 2529, as follows:

"The time during which a defendant is a non-resident of the state shall not be included in computing any of the periods of limitation above described."

*Shiras, Vanduzee & Henderson,* for plaintiff.

*Griffith & Knight,* for defendants.

LOVE, D. J. The plaintiff contends that a foreign corporation cannot in any case plead the statute of limitations in this state because it is a non-resident of the state. It is an artificial person existing only by the law of its creation. It has no existence and can have no existence outside of the state by whose laws it has been created. It cannot change its abode; it is incapable of emigration; its fixed residence is in the state of its creation. It may have agents in other states; it may do business in them; it may, by the laws of such states, sue and be sued therein; but it can have but one residence, which must be and is in the state to which it owes its existence.

This is the plaintiff's argument, but does it not proceed upon an erroneous assumption? Can it be truly said that a corporation has really a residence anywhere? It is said that a corporation is an artificial person, and by a natural transition of thought a place of residence is ascribed to this artificial person. But is it not by a mere fiction of law that personality, and residence in place, are ascribed to a corporation? What is a corporation? Would it not be more accu-

rate to call it an artificial being—a mere legal entity—than an artificial person? Doubtless a corporation is a legal being and has a legal existence in the state of its creation, but it is difficult to conceive the idea of a residence in place for it. If you search for a corporation, how will you find it and do any manner of business with it? You will find and know the corporation by and through its agents; through them alone will you be able to do any business whatever with the corporation. The agents of the corporation can be seen; it cannot. They can be served with process; it cannot. If you wish to sue the corporation, you must make service of legal process upon the agents of the corporate body. These agents have residences and can be found, but they are not the corporation. The president and directors are not the corporation. They may all die and none be elected to take their places; yet the corporation still lives. The president and directors are merely the agents of the corporate body. Neither are the stockholders the corporation. They can as such neither sue nor be sued on account of the corporation. They are not even its agents to make contracts, receive notice, or accept legal service. The corporation is a something—a legal entity—an artificial being or person—entirely distinct from both the stockholders and president and directors. Now, the stockholders and the president and directors have a residence, but the ideal, invisible, legal being called the corporation has none. Indeed, the legal existence of a corporation may be in one state or place, and the residence of every stockholder, as well as the president and directors, in another, unless the law creating the corporation requires their residence in the state or place of its creation. Thus, with respect to a corporation created by the laws of New York or of Iowa, every stockholder and the president and directors might reside in New Jersey or Illinois.

Since, then, a corporation cannot be said, except in legal fiction, to have residence anywhere, non-residence cannot, in a strict sense, be ascribed to it. In construing the word "non-residence," therefore, as used in section 2533, we must consider, not so much what may or may not be the "residence" of a corporation in the abstract, as what the legislature intended by the use of the word "non-resident" in the connection in which we find it. We must not stick in the bark; not confine our view solely to the meaning of the word "non-resident," but take in the whole scope of this legislation. We must consider the matter, not in the abstract, but in the concrete.

Seeing, then, that corporations cannot be said to have literally any residence in a place, and that they cannot be known and dealt with

and sued except by and through their agents, and seeing that the legislature provided in section 2611 of the same Code that foreign as well as other corporations may be sued in this state by service on the agents whom they have appointed to carry on their business here, can we doubt that the legislature intended that the presence of the agent in this state subject to process should be deemed, as to the legal purposes of a suit, with all its incidents and defenses, the presence of the corporation? Can we suppose the legislature intended that a foreign corporation might be sued in this state in the way prescribed, and yet deprived of one of the essential rights accorded to every other defendant?

A strict and literal interpretation of section 2533 would, as against foreign corporations, rob it of all reason; for the sole reason for providing that the "time during which the defendant is a non-resident of the state shall not be included in computing any of the periods of limitation," is to save the rights of the plaintiff, where, by reason of the defendant's absence, the plaintiff cannot get service upon him. But the facilities for suing foreign corporations doing business in Iowa are greater than those which the law furnishes against individuals residing here. A foreign corporation may be sued in any county where its agent may be found carrying on its business, and it cannot do business without agents. An individual must be sued in the county of his residence. To say, therefore, that a plaintiff may sue a foreign corporation anywhere in the state, and at any time after the cause of action accrues and yet that the corporation is to be deemed a non-resident, and may not, therefore, plead the statute of limitations, is to make the statute purely arbitrary. It is equivalent to saying that the corporation shall be deemed resident, or at least present, for the purpose of being sued, but not resident with respect to this defense of the suit. This construction of the statute, while wholly unnecessary to protect the plaintiff's rights, would work infinite detriment to foreign corporations doing business in Iowa; for with this construction they might be sued upon stale claims resting in parol, or for personal injuries 10 or 20 years after the cause of action accrued, and long after the witnesses of such transactions have passed away. Thus would the very policy and purpose of the limitation law be subverted by a too literal interpretation of one of its own provisions. The legislature could surely not have intended that the statute of limitations should be so construed as to annul and defeat the very purpose for which it was enacted

There is nothing in the decisions of the supreme court of the United States, when properly understood, to impair our conviction of the soundness of the views we have expressed. That court has often laid down the doctrine that a corporation is a legal entity, having no existence beyond the limits of the state of its creation; that it cannot change its abode; that it cannot migrate from one state to another; that it cannot at will transfer itself as a legal being or person from one jurisdiction to another, etc. This doctrine is undoubtedly entirely sound, but what does it decide as to the mere residence of the corporation, and, more especially, as to the meaning of the word "non-resident," as used in the Iowa statute? Legal existence and residence are by no means the same thing. Indeed, while the artificial being called a corporation has a clearly-defined legal existence, who can safely affirm that, considered in the abstract and apart from its agents, it has any residence whatever? This abstract being, this incorporeal legal entity, cannot, for manifest reasons, migrate from one state to another. Since it cannot transfer the law of one state to another state, how can it, being as it is a mere creation of the law of the state to which it belongs, exist in any state other than the one in which the law of its life prevails? The law of the state creating a corporation is the breath of its life. Such I understand to be the doctrine announced in the cases cited below, and it has generally been laid down with reference to the citizenship of corporations. The supreme court have, we know, by a legal fiction, endowed corporations with citizenship in the states by which they are created, and they cannot transfer this citizenship from a state where the law alone gives them life to a state in which no law exists to keep them alive. As a natural person passing from vital air into vacuum dies, so a corporation transferred from its state of life-giving law to a place where it has no law ceases to live.

But does it follow from this doctrine that a corporation may not have a legal residence, through its agents, in a state other than the one of its creation, with the assent of the state in which it is so present, for business or other purposes? May it not, when so present, make contracts, commit torts, sue and be sued? And if so, why may it not be deemed to have a legal residence or presence, if you will, so far as the statute of limitations is concerned? Is it a strained construction of the word "residence," as used in our statute, which leads to a conclusion at once so just and rational? Indeed, the supreme court of the United States, in *Ex parte Schollenberger,*

compelled the circuit court of the United States for Pennsylvania, by *mandamus,* to take jurisdiction of certain causes against a foreign corporation, commenced by a citizen of Pennsylvania and dismissed by the circuit court for want of jurisdiction. The ground of this decision was that the foreign corporation was carrying on business in Pennsylvania, and had agents there subject to legal process. 96 U. S. 369, 376.

The chief justice, speaking for the court, says:

" The language of this court in *Railroad Co.* v. *Harris,* 12 Wall. 65, through Mr. Justice Swayne, is; ' It [a corporation] cannot migrate, but it may exercise its authority in a foreign territory upon such conditions as may be prescribed by the place. One of these conditions may be that it shall consent to be sued there. If it do business there it will be presumed to have assented, and will be bound accordingly.' "

See *Bank of Augusta* v. *Earle,* 13 Pet. 588; *Ohio & Miss. R. Co.* v. *Wheeler,* 1 Black, 295; *Runyan* v. *Coster's Lessee,* 14 Pet. 129; *Louisville, C. & C. R. Co.* v. *Letson,* 2 How. 497; *Covington Drawbridge Co.* v. *Shepherd,* 20 How. 227, 233; *Paul* v. *Virginia,* 8 Wall. 168, 181.

We repeat that the true question is not what is to be deemed the residence of a corporation in the abstract, but rather in what sense did the legislature of Iowa use the word "non-resident" in the section under consideration? This question is by no means answered, as counsel seem to suppose, by the decision of the supreme court of the United States in *Tioga R. Co.* v. *Blossburg & C. R. Co.* 20 Wall. 137. The court in this case simply follows the courts of the state of New York in expounding the statute law of that state, which decisions, it may be conceded, sustain the plaintiff's position in the present case. Far, however, from expressing any approval of the decisions of the New York courts, Mr. Justice Bradley, in delivering the opinion, intimates that the supreme court of the United States considered them on principle unsound, and Mr. Justice Miller, in his dissenting opinion, emphatically condemns the doctrine of the New York courts. Mr. Justice Bradley, delivering the opinion, says:

" The courts of New York have decided that a foreign corporation cannot avail itself of the statute of limitations of that state. These decisions upon construction of the statute are binding upon us, whatever we may think of their unsoundness upon general principles."

The case in the supreme court of the United States most resembling the present case, in which that court, not being bound by any state decision, gives its independent judgment, was the *Ex. Co.* v.

*Ware,* 20 Wall. 543. The statute of the state of Nebraska (though not fully given in the report) provides that the time of the defendant's absence from the state is not to be computed, but in case of a foreign corporation, if it has a managing agent in the state, service of the suit may be made upon such managing agent. This is substantiantially the same as our legislation on the same subject.

The circuit court of the district of Nebraska instructed the jury as follows:

"If you find that the defendant had a managing agent within the state at the time of the loss, then the statute began to run from that time, and if it had such agent in the state for the next five years after the loss, then this action is barred, but otherwise it is not. In other words, to bar this action the plaintiff must have been able, for five years before the suit was brought, to have sued the defendant in this state, and compelled it to answer the suit by a service upon a managing agent therein."

The supreme court of the United States affirmed the correctness of this instruction, saying they could see no error in the charge, and this is in accord with the Iowa and Illinois adjudications. The decisions of the state courts upon the questions under consideration are in conflict. Indeed, upon what question of the least doubt are they not in conflict? The decisions of the courts of New York are, as we have seen, opposed to the view we have taken above. Those of Illinois, on the contrary, fully sustain our position. See *Bank of N. A.* v. *C., D. & V. R. Co.* 82 Ill. 495; *Pennsylvania Co.* v. *Sloan,* 1 Bradw. 64; *Bristol* v. *Chicago & A. R. Co.* 15 Ill. 436.

But it is, of course, to the decisions of the supreme court of Iowa that we must chiefly look in expounding the statutes of this state; and if there was any decision of that tribunal directly upon the question before us, it would be our duty to follow it. There is, perhaps, no such decision to guide us, but the whole tenor and scope of the state supreme court decisions favor strongly the conclusion at which we have arrived. Thus the supreme court of Iowa, in *Baldwin* v. *M. & M. R. Co.* 5 Iowa, 519, cite with approval the language and doctrine of *Bristol* v. *C., A. & R. R. Co.* 15 Ill. 438, as follows:

"The residence of a corporation, if it can be said to have a residence, is necessarily where it exercises corporate functions. It dwells in the place where its business is done. It is located where its franchises are exercised. It is present where it is engaged in the prosecution of the corporate enterprise. This corporation has a legal residence in any county in which it operates the road or exercises corporate powers and privileges. In legal contemplation, it resides in the counties through which its road passes, and in which it transacts its business."

Again, in *Richardson* v. *B. & M. R. R. Co.* 8 Iowa, 263, the court say:

"The material question is whether the defendants had a residence in Henry county. And this must be regarded as settled by the case of *Baldwin* v. *M. & M. R. Co.* 5 Iowa, 518. It was there held that a corporation like a railway company resides in counties through which the road passes and in which it transacts its business; that it has a legal residence where it exercises corporate powers and privileges."

It is no answer to this to say that these cases relate to Iowa corporations, since the question is, what is the true interpretation of the words "residence" and "non-residence," in our legislation, when applied to railway corporations? Our legislation has distinctly recognized the right of foreign railway corporations to run and operate their roads and exercise their franchises in Iowa, and this surely brings them within the doctrine as to what constitutes legal residence laid down in the cases cited. See, also, *Penley* v. *Waterhouse*, 1 Iowa, 498, and *Savage* v. *Scott*, 45 Iowa, 132. These cases, though dissimilar in their facts to the present case, and therefore not directly in point, do, nevertheless, favor distinctly the doctrine that the true test of legal residence is the fact that the defendant is within the jurisdiction and subject to legal process.

In *Cobb* v. *Ill. Cent. Ry. Co.* 38 Iowa, 608, the defendant pleaded the statute of limitations and the court sustained the plea, but it is said that the "question now under consideration was not raised, considered, or decided." This may be true as far as counsel were concerned in that case, but it would seem that when the question was directly made by the plea of the statute, the court must have passed upon it