# SIDWAY v. MISSOURI LAND & LIVE STOCK COMPANY, LIMITED, Appellant.

### Division Two, March 30, 1905.

1. **PLEADING: Services Rendered: Different Agreements: One Count and Exhibit.** Plaintiff in one count sued for services rendered under an agreement to render services as and when subsequently requested, and in an exhibit set forth twelve distinct and separate claims. *Held*, that each claim should have been pleaded in a separate count, since it is plain that the service rendered in pursuance to each subsequent request and a refusal to pay for it was a distinct cause of action, and involved separate and independent inquiries, and separate testimony and a separate finding of the value of each.

2. ———: ———: **When Requested.** An agreement to render services when requested, does not make it obligatory upon the promisor to request such services.

3. ———: ———: **Exhibit.** Where the suit is for the reasonable value of services rendered under a general contract of employment, and no account of their value was ever kept or rendered, and the subject-matter is not an account within the purview of the statute, the repository of the facts upon which plaintiff must rely is the petition, and not an exhibit referred to in the petition and made a part thereof, for the statute allowing an itemized account to be filed with the petition is no authority for an attempt in such case to supplement the petition with an exhibit.

4. **VOLUNTARY SERVICES: Recovery.** Whether beneficial or not, there can be no recovery for services rendered voluntarily and with no expectation at the time of rendering them that they will be paid for. A subsequent change of intention by the party performing the service does not alter this rule.

5. ———: **Evidence: Letters: Verbal Statements.** Letters written by a shareholder of a foreign corporation to its secretary, stating he did not claim or expect compensation for his advice and services rendered the company in looking after its properties in this State, and that such services were rendered by him on the

ground that he was its largest stockholder, are not to be placed by the instructions in the category with verbal statements, when the whole controversy is whether or not there was a verbal contract with the company that he was to be paid for such services. His verbal statements, owing to the fact that after the lapse of time they may not be accurately remembered by him, are to be received by the jury with caution, but such infirmity does not attach to his written admissions and declarations.

6. ———: Limitations: Account: Last Item. Where no book account or paper or memorandum contemporaneous with the rendering of the services for which the action is brought was kept, and the allegation being that the contract was to render services when requested, and the plaintiff in order to establish his claim goes through a large number of letters, which are not themselves offered in evidence, and from them makes up his statement of the services rendered and the value therof, the last item in the account does not draw after it the items of previous date so as to save the bar of the Statute of Limitations as to the whole account, but so much of it as was a charge for services rendered five years prior to the bringing of the suit is barred, for under the contract plaintiff's right to recover for services performed in pursuance to each separate request accrued as soon as performed.

7. ———: ———: ———: Foreign Corporation. Where a foreign corporation has become a domesticated one by engaging in business here and keeping a general office in this State, where it kept an agent upon whom service could at all times have been had, it is not, in contemplation of law, a non-resident within the meaning of the Statute of Limitations.

8. ———: Deceiving Stockholders: Estoppel. For services rendered by a stockholder in pursuance to a secret understanding between him and the board of directors that the burden of managing a certain business was to be taken off of the shoulders of the stockholders, when in fact that was not done, he cannot recover.

9. COUNTER-CLAIM: Former Trial: Estoppel. Where a defendant corporation on a former appeal obtained a reversal of a judgment against it and then at the retrial pleads its counter-claim as and for unliquidated damages, it is estopped from demanding judgment on the verdict in its favor on the first trial.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*Geo. Hubbert, O. L. Cravens* and *Rechow & Pufahl* for appellant.

(1) Points determined by the decision and opinion on the first appeal are not open questions now, but are *res judicata;* and the order of the Newton Circuit Court is in full force, though it never has been complied with; and the Polk Circuit Court was without authority to disregard that order or put appellant under any apparent necessity of waiving objection to the petition or for substituting its own view as to what is a sufficient pleading. May v. Crawford, 150 Mo. 524; Chapman v. Railroad, 146 Mo. 494; Overall v. Ellis, 38 Mo. 209; Butler v. Bank, 165 Mo. 456. (2) The company's articles of association, with the laws of Great Britain relating thereto, constitute both its charter and by-laws; and the provisions thereof bind the respondent as a member, dominate this case and bar his claim. 10 Cyc. Law and Proc., pp. 350, 774, 775; Purdy v. Bankers' Assn., 101 Mo. App. 91; St. Louis v. Clemens, 43 Mo. 404; 3 Thom. Corp., secs. 3906, 3908; Hill v. Coal Co., 119 Mo. 9; State ex rel. v. Wray, 55 Mo. App. 646; Johnson v. School District, 67 Mo. 319; 17 Am. and Eng. Ency. Law, 83. (3) The supposed express contract, on which respondent was permitted to recover below, is not sufficiently pleaded under the former order and decision in this case; and it is error to frame, try or adjudge issues not made by the essential pleadings of the parties. Garland v. Smith, 164 Mo. 1; Glass v. Gelvin, 80 Mo. 297; Wade v. Hardy, 75 Mo. 394; 15 Am. and Eng. Ency. of Law (2 Ed.), 1078. (4) The evidence as a whole is conclusive that respondent's services were given and received as free of charge, and appellant's demurrer thereto should have been sustained. Besides, respondent is concluded by the decision on the appeal from the first trial, wherein the evidence was substantially the same. Donnell v. Wright, 147 Mo. 648; Aull v. Aull, 80 Mo. 201; Jones on Ev., secs. 271,

291, 298; Fleeno v. Weston, 31 Vt. 345; Riley v. Sherwood, 155 Mo. 37; Klockenbrink v. Railroad, 172 Mo. 683. (5) According to respondent's own testimony, his services from the Dummit contract of July, 1889, could not be the basis of action, because, if given, they were in execution of a fraudulent conspiracy against the appellant. Whar. Agency, 336; Mech. Agen., sec. 1027; 22 Am. and Eng. Ency. Law (2 Ed.), 921; 1 Am. and Eng. Ency. Law (2 Ed.), 1102; Wadsworth v. Adams, 138 U. S. 380; Paul v. Minneapolis, 87 App. 654; Trice v. Comstock, 121 Fed. 620. (6) The respondent is barred of any right to recover for any alleged cause, or service, not within the five years statutory limit; and that is true even though his services were continuous; and it makes no difference that appellant is a foreign corporation. R. S. 1899, sec. 4273; Alkire Co. v. Taggart, 60 Mo. App. 393; Landis v. Saxton, 105 Mo. 491; Bollman v. Peake, 96 Mo. App. 253; Railroad v. Burlingame, 36 Kan. 628; Kraft v. Thomas, 123 Ind. 513; Palmer v. Palmer, 36 Mich. 488; Newhall v. Sherman, 124 Cal. 509; Riverview v. Dance (Va.), 35 S. E. 720; Chadwick v. Chadwick, 115 Mo. 586; Wood, Lim., sec. 120; Miller v. Cinnamon, 168 Ill. 447; Schmidt v. Pfau, 114 Ill. 494; Freeman v. Freeman, 65 Ill. 106; Hale v. Ard. 48 Pa. St. 22; Raynor v. Robinson, 36 Barb. 128; Graham v. Stanton, 177 Mass. 321; Adams v. Mills, 49 La. Ann. 775; Thompson v. Tex. Cat. Co., 24 S. W. 856; Jones v. Lewis, 11 Tex. 359; McLaughlin v. Maund, 55 Ga. 689; Martin v. Fox, 19 Wis. 552. As to foreign corporations: McNichols v. Mer. Agency, 74 Mo. 457; R. S. 1899, secs. 570, 1007, 4282; Orr v. Wilmarth, 95 Mo. 212; Mathews v. Appleberry, 57 Mo. App. 615; Harding v. Railroad, 80 Mo. 659; St. Louis v. Wiggins, 40 Mo. 580; Slavins v. Railroad, 51 Mo. 308; Murf. Foreign Corp., sec. 247; Hall v. Railroad, 28 Vt. 401; Ins. Co. v. Duerson, 28 Gratt. 630; Winney v. Mfg. Co. (Iowa), 50 N. W. 565; Bank v. Railroad, 82 Ill. 495; Bristol v. Railroad, 15 Ill. 495;

Cobb v. Railroad, 38 Iowa 608. (7) The court below should have exercised its discretion soundly in the interest of a dispassionate trial by capable referee of the long itemized statement of account exhibited; and it was error to deny the motion for reference on plaintiff's petition. Ice Co. v. Tamm, 138 Mo. 389; Mills v. Thursby, 11 How. Pr. 113; Drug Co. v. Graddy, 57 Mo. App. 44. (8) The appellant should have been given the benefit of its verdict on the first trial against respondent, who did not appeal therefrom or attempt to have same vacated in any way. R. S. 1899, secs. 694, 697, 720-4; Booth v. Loy, 83 Mo. App. 601; Russell v. Railroad, 154 Mo. 428; Tinsley v. Kemery, 170 Mo. 317; Russell v. Railroad, 29 Mo. App. 371; Nichol v. Hyre, 58 Mo. App. 134.

*John T. Sturgis* and *Adiel Sherwood* for respondent.

(1) The Statute of Limitations does not bar plaintiff's claim. Ring v. Jamison, 66 Mo. 428; Vitti v. Dixon, 12 Mo. 480; Steamboat v. Behler, 12 Mo. 477; Coal Co. v. Steamboat, 36 Mo. 446; Boylan v. Steamboat, 40 Mo. 250; Finney v. Brant, 19 Mo. 45; Fire Ext. Co. v. Elevator Co., 165 Mo. 181; MacAdam v. Scudder, 127 Mo. 354; Page v. Bettes, 17 Mo. App. 375; Chadwick v. Chadwick, 115 Mo. 586; Gibson v. Jenkins, 97 Mo. App. 36; Carson v. Steamboat, 16 Mo. 256; Austin v. Stine, 9 Mo. 558; Bambrick v. Bambrick, 157 Mo. 423; Livermore v. Wright, 33 Mo. 31; Moore v. Renick, 95 Mo. App. 209; Waldron v. Alexander, 35 Ill. App. 319; O'Brien v. Sexton, 140 Ill. 517; Littler v. Smiley, 9 Ind. 116; Grave v. Pemberton, 3 Ind. App. 71; Knight v. Knight (Ind. App.), 30 N. E. 421; Purviance v. Purviance, 14 Ind. App. 269; Sharick v. Bruce, 21 Iowa 305; Carter v. Carter, 36 Mich. 207; Shock's Admr. v. Garrett, 69 Pa. St. 144; Martin v. Imp. Co., 19 Wis. 552. This action is upon an express contract. The

question whether or not there was one or more contracts was a question for the jury. The rule in Missouri has always been that "when the account sued on is a running account, and it is fairly inferable from the conduct of the parties while the account was accruing that the whole was to be regarded as one, none of the items are barred by the Statute of Limitations unless all are." Ring v. Jamison, 66 Mo. 428; Vitti v. Dixon, 12 Mo. 480; Steamboat v. Behler, 12 Mo. 477; Coal Co. v. Steamboat, 36 Mo. 446; Boylan v. Steamboat, 40 Mo. 250; Finney v. Bryant, 19 Mo. 45; Fire Ext. Co. v. Elevator Co., 165 Mo. 181; MacAdam v. Scudder, 127 Mo. 354; Page v. Bettes, 17 Mo. App. 375; Chadwick v. Chadwick, 115 Mo. 586; Gibson v. Jenkins, 97 Mo. App. 36; Carson v. Steamboat, 16 Mo. 256; Austin v. Stine, 9 Mo. 558; Bambrick v. Bambrick, 157 Mo. 423. (2) Declarations made by general officers of a corporation or acts done by them in the transaction of the business thereof—and general officers include directors—are the declarations of general agents and stand upon a different footing from declarations and admissions made by special agents of limited authority, especially so when the evidence discloses the fact that the entire business of the company or the entire transaction was committed to a particular officer or set of general officers, and when the admissions or declarations tend to establish an agreement they have made in the course of their general agency and valuable services have been received by the company; and this rule of law can be supported upon two theories. Morse v. Railroad, 6 Gray. 450; Costigan v. Trans. Co., 38 Mo. App. 225; Railroad v. Jewett, 16 Ind. 273; Paper Works v. Willet, 1 Robt. (N. Y.), 131; Railroad v. Blade, 12 Rich. (S. C.), 634; Railroad v. Dally, 19 Ill. 353; Express Co. v. Harris, 120 Ind. 73; Green v. Min. Co., 45 Cal. 522; Abbott v. Seventy-Six L. & W. Co., 87 Cal. 323; Des Moines L. & T. Co. v. Trust Co., 82 Iowa 662; Railroad v. Coleman, 18 Ill. 297; McGennes v. Adriatic Mills, 116 Mass.

177; Toll Bridge Co. v. Batsworth, 30 Conn. 380; Halsey v. Railroad, 45 N. J. E. 26; Milbank v. De Riesthal, 82 Hun 537; Bank v. Fried, 2 Hill 445; Josephi v. Mady. Co., 13 Mont. 125; Reynolds v. Ins. Co., 80 Iowa 563; Tryon v. White & Corbin Co., 62 Conn. 161; Min. Co. v. McMahon, 1 Head 582; Tel. Co. v. Bennett (Texas), 21 S. W. 700; Walacek v. Railroad, 57 Mo. 21; 2 Whart., Ev., secs. 1173, 1177; Northrupp v. Ins. Co., 47 Mo. 442; Barry v. Foyles, 1 Pet. 311; Railroad v. Weaver, 35 Kan. 413; Hand v. Coal Co., 143 Pa. St. 408; Dunn v. Rector, 14 Johns. 118; Hooker v. Eagle Bank, 30 N. Y. 86; Fister v. Larue, 15 Barb. 323; Ins. Co. v. Potts, 5 N. J. L. 158; Hitchings v. St. Louis Co., 68 Hun 33; Min. Co. v. Humble, 153 U. S. 553; Chamberlin v. Min. Co., 20 Mo. 96; Morawetz, Corp. (2 Ed.), sec. 540a, p. 510; Railroad v. Green, 15 N. J. Eq. 469; National Exchange v. Drew, 2 Macq. S. C. App. 103; Trustees of St. Mary's Church v. Cagger, 6 Barb. 579; Hotel Co. v. Newman, 30 Mo. 121; Bullock v. Lumber Co., 31 Pac. 370. (3) Plaintiff is not required to show any formal record of the corporation to prove his employment. The question is whether the express contract sued on was made and services performed under it; and that question is for the jury—the failure of the corporation's officers to make a record of the contract actually made will not preclude his recovery; otherwise, every man working for a corporation would be at the mercy of officers who have charge of corporation records. Hotel Co. v. Newman, 30 Mo. 120; Trustees St. Mary's Church v. Cagger, 6 Barb. 579; Taussig v. Railroad, 166 Mo. 32; Bank v. Hughlett, 84 Mo. App. 272; Beach v. Stouffer, 84 Mo. App. 397; Mill Co. v. Bennett, 38 Mo. App. 460. (4) The fourth instruction given by the trial court at the request of plaintiff simply declared the legal effect of certain evidence if the jury found any such evidence. An instruction declaring the legal effect of particular evidence is not in vio-

lation of the rule prohibiting the comment on the evidence or prohibiting the singling out of particular facts in the chain of proof. Stewart v. Sparkman, 75 Mo. App. 109; Hunt v. Railroad, 75 Mo. 255; Martin v. Imp. Co., 19 Wis. 559; Tyler v. Hall, 106 Mo. 323; Banchor v. Gregory, 9 Mo. App. 102; Chouteau v. Iron Works, 83 Mo. 83; Daugherty v. Railroad, 97 Mo. 662; Lumber Co. v. Markam, 96 Mo. App. 56. (5) The motion filed in the trial court by defendant for judgment upon its counterclaim notwithstanding the verdict against it on the counterclaim, was a complete change of front by defendant, for the facts are pleaded in the counterclaim to show an unliquidated demand, no mention being made about any verdict or judgment in defendant's favor upon the same issues at the first trial, and not a word of evidence from the record or otherwise was offered in support of such a contention by defendant. Moreover, its instruction numbered 19 (No. 17 refused and slightly modified), submits the matters pleaded in the counterclaim as an unliquidated demand. Inconsistent positions are not favored. Dunnigan v. Green, 165 Mo. 98; Johnson v. Hutchison, 81 Mo. App. 299; Phelps v. Salisbury, 161 Mo. 1; Estes v. Well, 163 Mo. 387; Russell v. Railroad, 154 Mo. 431; Clements v. Yeates, 76 Mo. 623; Harrison v. Railroad, 37 Mo. 307; Link v. Vaughn, 17 Mo. 585; Newham v. Kenton, 79 Mo. 385. (6) Where there is conflicting evidence the facts will be taken as found—the judgment is conclusive if there is any legal evidence to support it. Huckshorn v. Hartwig, 81 Mo. 648; Hamilton v. Berry, 74 Mo. 176; Dalton v. Bank, 54 Mo. 105; Scruggs v. Scruggs, 41 Mo. 243; Wall v. Shindler, 47 Mo. 282; Hamilton v. Boggess, 63 Mo. 233; Ramsey v. Henderson, 91 Mo. 560; Waddell v. Williams, 50 Mo. 216; Allen v. Jones, 50 Mo. 206; Wilson v. Lightbody, 29 Kan. 446; Carmichael v. Cox, 85 Ind. 151; Schad v. Sharp, 95 Mo. 573; Ogleboy v. Corby, 96 Mo. 285; Caruth v. Richeson, 96 Mo. 186; McKinney v. Ward, 39 Kan. 279; McCallister v. Sigler,

116 Ind. 476; Somers v. Somers, 39 Kan. 132; Huck-shorn v. Hartwig, 81 Mo. 648; Cole v. Parker, 70 Mo. 372; Conlee v. Wright, 108 Ind. 455; Brown v. Manning, 29 Kan. 606; Arnold v. Wilt, 86 Ind. 367; State v. Cook, 58 Mo. 546; Hearne v. Heath, 63 Mo. 84; Moore v. Davis, 51 Mo. 233; Peck v. Pollard, 55 Mo. 26; Holbrook v. Gouveneur, 114 Ill. 623; Doering v. Saum, 56 Mo. 479; Wall v. Shindler, 47 Mo. 284. (7) The court did not err in denying defendant's motion for a compulsory reference. R. S. 1899, sec. 698; McCormick v. St. Louis, 166 Mo. 336; Dooley v. Barker, 2 Mo. App. 327; Society v. Fitzwilliam, 12 Mo. App. 447, 84 Mo. 406.

GANTT, J.—This cause is in this court on a second appeal.

The first appeal is reported in 163 Mo. 342. After the cause was remanded to the Newton court, a change of venue was awarded to Polk county. The plaintiff filed a third amended petition, which was held bad on demurrer, and thereupon plaintiff filed a fourth amended petition. Defendant made a timely motion to strike out this fourth petition because it failed to comply with the order of the Newton Circuit Court, and for the reason that it was confusing, indefinite, duplicitous and not sufficiently itemized, and did not contain a statement of facts constituting a cause of action, which motion was overruled, and defendant duly excepted. Thereupon defendant filed its answer, containing, first, a general denial; second, that all the alleged services for which plaintiff claimed, so far as rendered in fact, were voluntary and gratuitous, without charge or intention to charge defendant therefor, plaintiff being at the time a corporate member and large shareholder in defendant company, and were so received and accepted by defendant's company; that plaintiff is estopped from asserting defendant's liability to him for such services by the terms of the articles of agreement and associa-

tion and the laws of Great Britain under which defendant was and is incorporated, which said articles require all such liabilities and undertakings as alleged to be contracted and incurred only by or under the resolution of its board of directors, duly minuted in writing on the part of the company, and that such employment was not so minuted by any resolution or agreement; that said claim for said services was barred by the Statute of Limitations of five years before this suit was commenced.

The answer also contains a counterclaim upon a certain bond executed by one Dummit, with plaintiff as surety thereon, in the sum of $3,000. Plaintiff in his reply admitted the execution of the bond, but pleads full performance of all the conditions thereof. Before the last trial defendant moved the court to refer the case to a suitable referee on the ground that a trial of the issues would necessitate the examination of a long account and extensive correspondence, which motion the court overruled and defendant excepted.

At the close of the evidence defendant demurred to the evidence on both counts of the petition. The court sustained the demurrer on the second count and plaintiff took a nonsuit.

The court overruled the demurrer to the evidence on the first count and the jury returned a verdict for plaintiff for $11,198, with interest at six per cent, and found against the defendant's counterclaim.

When this cause was here on the former appeal it was held that the defendant's motion to strike out plaintiff's second amended petition because it did not set out the facts, agreements, contracts and grounds constituting his cause of action, should have been sustained. It appears that the circuit court sustained a demurrer to the third amended petition, and thereupon the plaintiff filed the petition upon which he obtained the verdict appealed from.

The general facts of this case are stated in the

report of the first appeal and to that reference is made. [Sidway v. Mo. Land & Live Stock Co., 163 Mo. 342.] Such additional facts as were developed on the last trial will be noted in the course of the opinion.

I. We are confronted at the threshhold with the complaint that the fourth amended petition was challenged by a timely motion to strike it out because the plaintiff had failed to comply with the ruling of this court on the first appeal, and the positive command of the circuit court to make it specific and certain, and conform to the requirements of a good pleading.

The original petition was filed in the office of the circuit clerk of Newton county, March 3, 1896. The fourth amended petition was filed May 28, 1902. On the same day the motion to strike out was filed and overruled and defendant excepted. The specific objection is that "the said fourth amended petition and counts thereof are vague, indefinite, uncertain, and they intermingle, confuse, and confound, under one inseparable statement, divers matters relating to distinct and several undertakings, various general employments, special engagements and services," etc.

The petition by way of a general allegation states that "defendant is indebted to him for services rendered and expenses incurred by him in and about the transaction of its business and in advising and assisting in the management of its property and business from the year 1884 to the year 1895, both inclusive, in the sum of $11,000, the items and particulars whereof more fully appear from the itemized account and bill of particulars herewith filed marked exhibit 'A' and made a part hereof together with the following statements. That the services were rendered by plaintiff at the special instance of defendant under the contract and agreement as hereinafter alleged and set forth and under its direction through its officers and agent and its president, secretary, directors and managers, and with their

knowledge and consent, and were valuable to defendant and defendant received the benefit thereof and agreed to pay therefor whatever the same were reasonably worth and the prices charged are reasonable, and are fixed by a reasonable value of the same upon a *quantum meruit*." The contract upon which the various services are alleged to have been performed is stated as follows: "That the *plaintiff* being in Edinburg, Scotland, in the winter of 1884-5, *was requested* by defendant's board of directors then and there in session (such requests having been made, however, on several previous occasions) to continue in defendant's employ and *render it assistance* and perform services for it from *time to time as occasion might require,* or as requested and instructed by defendant, its officers, directors or managers in America, or as in his judgment might be deemed necessary; to give his time and attention to its business and to give it the benefit of his knowledge and experience in the management of its affairs, to which plaintiff assented and defendant then and there promised and agreed to pay plaintiff for such services whatever the same were reasonably worth." Following this averment of the contract is a long and sweeping allegation of services rendered from 1885 to 1895 by way of giving advice, answering letters, reporting conditions of the farm, the business, the management, selling of lands, etc., with no reference to the date or times when such services were rendered, to whom the land was sold, or any other concise statement of any issuable fact. In a word this petition as to all these general statements is obnoxious to the same criticism passed upon the second amended petition by this court on the former appeal, but the pleader evidently sought to remove that objection by making the addendum, "the items of which will fully appear by an itemized statement herewith filed."

In that itemized exhibit appears *by separate years,* beginning with 1884, a statement of the various alleged

services rendered during such years. In this exhibit "A" there is set forth twelve distinct separate claims, each of which should have been pleaded in a separate count. Although the cause of action attempted to be stated in each paragraph of the exhibit "A" may be said to have arisen from the same general contract, to-wit, the agreement to render the defendant company services whenever or as requested by it to do so, it is plain that the service rendered in pursuance of each subsequent request and a refusal to pay him for it was a distinct cause of action, and involved separate and independent inquiries, and testimony under a separate finding of the value of such services. Until such request was made and the service rendered there was no obligation on either plaintiff or defendant. Defendant might never have required any service of plaintiff and the mere request to serve it *when requested* and the assent of plaintiff to do so, did not make it obligatory on defendant to require such service. The agreement looked to the future to serve when requested, and to receive a reasonable compensation when the service should be done.

We think this conclusion does not militate against those cases which hold that the several breaches of a bond or contract constitute but one cause of action. [Rissler v. Ins. Co., 150 Mo. l. c. 373.]

In the last-cited case and those of like character, there was one contract and several breaches; here the agreement stated was to render services as and when subsequently requested. Each request and performance of service was a distinct undertaking though growing out of one transaction. But the fatal vice of this petition is the same as that pointed out on the former appeal. The general allegation is quite as indefinite as that condemned in the second amended petition, and plaintiff tacitly concedes this by attempting to cure it by attaching the exhibit "A" which enumerates certain services. This is not a suit on an account. No

such account was ever kept or made, and the statute allowing the filing of an itemized account with a petition is no authority for the attempt to supplement this petition with this exhibit "A." The place for the statement made in this exhibit was in the body of the petition. If the plaintiff could state them in an exhibit he could have stated them in his petition. That is the repository of the facts upon which a plaintiff must recover, and not an exhibit for which our statute makes no provision save in a suit upon an itemized account, and plaintiff's own evidence shows he has no such an account as this, and besides the subject-matter of the exhibit shows it is not an account within the purview of our statute.

The court erred in not sustaining the motion to strike out this petition and in not requiring plaintiff to file one complying with the statute requiring a concise statement of the facts.

II. When this cause was here on the former appeal, Judge SHERWOOD, speaking for the court, after reproducing communications to the board in Scotland and the different directors to the effect that he was not charging for any service he might render the company, said:

"Aside from these letters of plaintiff, disclaiming all thought or intention of charging anything for his services, in the books of the firm in which he was a partner, engaged in selling land, etc., no such charge is made, nor did plaintiff, until suit was about to be commenced on the bond, ever lay claim for services rendered the company. And the very fact that during the lapse of so many years he made no charge and presented no account for his services, is pregnant evidence that no such charge was in contemplation on his part or anticipated by defendant company. [Aull Savings Bank v. Aull's Admr., 80 Mo. 199; Watkins v. Donnelly, 88 Mo. 322, and subsequent cases.] If there was no sub-

stantial evidence, as it seems there was not, to over-
come the frequently written admissions of plaintiff that
his services were gratuitous, then there was no basis
laid for an instruction given at the instance of plain-
tiff to the effect that the burden was on the defendant
to show 'that said services were gratuitously per-
formed.' It is everywhere conceded that no one can
make another his debtor without the latter's consent.
'But, ordinarily, if one stands by in silence and sees
labor performed on premises belonging to him, of which
he accepts and enjoys the benefits, a promise to pay
therefor may be inferred.' [8 Wait's Act. & Def., 719,
and cases cited; Sprague v. Sea, 152 Mo. l. c. 332.]
In this case, however, no such assumpsit can be raised
or implied in the very teeth of continued written as-
sertions of plaintiff that his services were *free* and that
he was getting no pay."

In that connection an instruction numbered 9 was
expressly disapproved.

All of the foregoing excerpts apply to the record
now before us. In addition thereto, other letters of
plaintiff were read in evidence on this last trial, in
which plaintiff in the most unequivocal language says
"he had not asked, as late as 1890, any compensation,
nor do I want it."

The law of this State is there can be no recovery
for services rendered voluntarily and with no expec-
tation at the time of rendition that they will be com-
pensated, and this is true whether the services were or
were not beneficial. A subsequent change of intention
by the party performing the service does not alter the
rule.

Over and against this positive written evidence
over plaintiff's own hand for many years, stands the
verbal testimony of plaintiff that he had a verbal con-
tract with the board in 1884-5 that he should receive
a reasonable compensation.

The board as then constituted consisted of Tate,

Littlejohn, Lawson, Landale and Martin. Of these Tate, Martin and Landale were dead at the time of this trial, and two others who came into the directory later, Skirving and Swan, had also died. All of the surviving members of the directory who had any knowledge of the matter contradict plaintiff as to any agreement to compensate him.

In addition to his numerous writen promises and admissions that he was not charging for his services and his inability to produce a scintilla of written evidence binding the board to reward him for his advice and services, we have the conduct of plaintiff and his relation to this company. He was its promoter in its organization. He was its largest shareholder. Never until the board called upon him to make good his suretyship on Dummit's bond did he formulate a demand or enter a single charge upon his books against the company for the services for which he now seeks compensation, although during all these years he was keeping an account with the company. Thus in 1885 in a letter to Mr. Fraser, the secretary, he notes that Mr. Fraser has called his attention to a balance against him on Douglas county lands and says, "It is correct," and then says, "I have an account for $54.62 for small sums paid out for the office in Neosho during the past two years, and fully intended to have had the two accounts settled long ago."

"1. 'L. B. Sidway,' for six items, beginning May 1, 1884, amount $52.21. Received payment June 29, 1885."

"2. 'L. B. Sidway' for 20 items beginning December 4, 1887, amount $325.07, stated March 9, 1888, balance $198.28.

"3. 'L. B. Sidway,' for balance on above and four additional items, including two trips to Neosho, November 18, 1887, and March 31, 1888, $92; amount, $178.15. Received payment June 3, 1888.

"4. August 11, 1888, The Missouri Land & Live

Stock Company, Limited, to L. B. Sidway, Dr., to balance of account in full, on May 1, 1888, $376.43. Received payment. L. B. Sidway.

"5. L. B. Sidway, by H. T. Sidway for eight items, beginning May 2, 1888, including 'trips to Neosho April, May and June,' receipted October 10, 1888, balance, $90.87.

"6. 'L. B. Sidway by H. T. Sidway,' eleven items, beginning August 1, 1888, including 'Exp. trips Neosho, August, September and October,' amount $100.72, receipted November 19, 1888.

"7. 'Sidway, Bogue & Co.,' nineteen items, beginning November 1, 1888, including 'three trips to Neosho,' in January, and 'three trips to Neosho' in March, 'consultation and draft of bond for J. M. Purdy,' February 11, and 'Plans of drawing for remodeling building,' February 20; total amount $431.72, dated 27th March, 1889, receipted by Sidway, Bogue & Co.

"8. 'L. B. Sidway by H. T. S.' two items, April, 1889, amount, $298; receipted May 1, 1889.

"9. Sidway, Bogue & Co., twelve items, beginning April 2, 1889, including 'four trips to Neosho since May 14th,' amount, $146.10. 'Received payment, Sidway, Bogue & Co.'

"10. 'Sidway, Bogue & Co.,' thirty items, beginning September 16, 1890, including 'Expense trip to S. L. and trlg. pr. L. B. S., $22.25,' March 6 and 'trip to St. Louis,' May 9, amounting to $374.13. 'Paid July 2, 1891, Sidway, Bogue & Co.'

"Defendant offered and read in evidence letter from L. B. Sidway to the secretaries, dated May 10, 1890, as follows:

" 'Messrs. Fraser, Stodart, and Ballingall,
      " 'Secretaries,           May 10, 1890.
         " 'Edinburgh, Scotland.

" 'Gentlemen: I have to-day charged your account with $50 for expenses in various trips to Neosho

and St. Louis.   My memorandum of these expenditures
is not perfect, but the amount is, I am confident, some-
thing less than the whole amount paid out.   There was
one trip to Neosho made entirely on your business.   One
to St. Louis, and several trips where the business was
partially yours, and partially on the account of others.

" 'Yours truly,

" 'L. B. SIDWAY.' "

In addition to this he was the largest shareholder
in the company and on at least two occasions, one as
late as 1888, was present in Edinburg at the annual
meeting, and not only was bound to know as a mem-
ber of the company that the annual reports under the
articles were required to state the liabilities of the com-
pany, but knew that no such claim as he now presents
was audited or recognized by the officers of the com-
pany and yet made no protest.   It is incredible that a
jury of ordinary intelligence could have reached the
verdict they did in this case on any other supposition
than that they were completely misled by the instruc-
tions of the court or utterly disregarded the evidence.

Pertinent to this great mass of written admissions
leading the officers of the company to understand plain-
tiff was not charging them for his advice and services,
and inviting them to ask for his counsel and advice on
the ground that as the largest stockholder in the com-
pany he would be amply repaid by its success, the cir-
cuit court gave the following instruction:

"4.   You are further instructed that if the defend-
ant, through its board of directors, contracted and
agreed to pay plaintiff the reasonable value of his time
and service in looking after the business and property,
and the management of its affairs, and that in pur-
suance of said agreement plaintiff rendered defendant
valuable services in looking after its business and prop-
erty, and in the management of its affairs, devoted his
time thereto, then any statement, written or verbal, that
he had not charged the defendant company for his time

or services theretofore rendered, or did not want pay for the same, if you believe he did so write or state, will not prevent him from recovering for the time or services he had so rendered.''

The controversy in this case was whether there was such a contract, and the duty devolved upon the jury to determine whether there was a contract, or whether such services as plaintiff in fact rendered were gratuitously performed without intention to charge for or receive payment for them, and that it was so understood by defendant.

Keeping in view the issue, this instruction could scarcely have been more confusing.

It announces two propositions irreconcilably in conflict. If plaintiff wrote, as he confessed he did, to the board that he was not expecting any remuneration and didn't want any and thereby induced them to ask his advice as the largest stockholder and on that ground, then he could not recover, and such conduct was at war with his claim of a contract for compensation, but the court tells the jury that such written statements will not prevent him from recovery. In other words, although the jury were confronted with these written promises and assurances absolutely negativing any contract for pay, in a form not depending upon the slippery memory of plaintiff or any other witness, they could disregard them in making up their verdict. Such is not the law. [Wagner v. Electric Co., 177 Mo. 65.] On the issue whether there was or was not such a contract these written admissions were of the highest importance.

As said on the former appeal, "they were in no sense mere *casually used expressions,*" and could not, in view of the continuous repetition of them, be so deemed by any rational mind. These *written statements,* identified by plaintiff as genuine, were placed in this instruction in the category with casual verbal statements and the jury led to believe that they amounted

to nothing when they contradicted the oral evidence of the plaintiff before the jury. While mere verbal statements, owing to the fact that after the lapse of time they may not be accurately remembered and stated by the witness, may be received with caution by the jury, no such infirmity attaches to written statements, the proof of which is the writing itself. On all sides it is conceded that written admissions and declarations are entitled to greater weight than mere verbal admissions, unless the latter are clearly and satisfactorily proved.

Particularly binding are written statements or admissions which lead those to whom they are written to adopt a course of conduct upon the faith thereof. Such was the character of these letters by plaintiff to the officers of the defendant company. Assured that he would make no charge for his advice and counsel as to the management of the company's affairs in Missouri, that he was only interested as the largest shareholder, and invited to consult plaintiff freely, what more natural than that the company should have felt a perfect confidence that no charge would be made. To permit plaintiff to thus invite the officers to seek his advice and counsel and to thus accumulate a large account for these services for a number of years would be rank injustice. That the company acted upon the gratuitous offers with no expectation of being called upon to pay for them does not admit of doubt in the light of the evidence in this case.

We think that the fourth instruction given for plaintiff as applied to the facts of this case was misleading and erroneous, and that it unquestionably led the jury to disregard the most potential evidence in the case and was highly prejudicial.

III. A most important question in this case is whether defendant was entitled to the benefit of the Statute of Limitations of five years as to all claims prior to January 1, 1891. The circuit court refused

defendant's instructions to the effect that all the alleged services prior to January 1, 1891, were barred by the five-year's Statute of Limitations.

It was announced in Ring v. Jamison, 66 Mo. l. c. 428, that the prior decisions of this court were opposed to the great weight of authority in this country as to the running of the Statute of Limitations against an account when all the charges are on one side, and there were no mutual accounts. [Vito Viti v. Dixon, 12 Mo. 480; Madison Coal Co. v. Steamboat Colona, 36 Mo. 446; Boylan v. Steamboat Victory, 40 Mo. 250; Finney v. Brant, 19 Mo. 45.]

In Chadwick v. Chadwick, 115 Mo. l. c. 586, Judge BLACK, speaking for this court, said: "It seems to be quite generally held that if the items are all on the one side, then the account is not mutual in the sense that the last item will draw after it the items previously charged so as to save the bar of the Statute of Limitations as to the whole account; but the rule has been otherwise settled in this State. Speaking of our decisions upon this point it was said: They are to the effect that when the account sued on is a running account *and it is fairly inferable* from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in the case of a merchant's account against a customer, none of the items are barred by the statute unless all are. [Ring v. Jamison, 66 Mo. 424.]"

Accepting these announcements as the true state of the law in his State, let us apply them to the facts of this case.

Plaintiff testified in his own behalf, "I will state to the court that *within the last three months* (prior to the trial in 1902) I have gone through over three thousand letters, letters received from the officers and directors of the company and copies of my answers to them *and from that* I have made up this statement (the

statement contained in the exhibit "A" filed with this petition)."

When it was objected that the letters were the best evidence and that it was not competent for the witness to refer to this recently made bill of particulars to refresh his memory, the court overruled the objection and defendant excepted.

There is not in this voluminous record the slightest pretense that this account or a single item in it was ever reduced to writing and such a charge made against defendant in any book account or on any paper or memorandum contemporaneous with the rendering of the alleged services for which this action was brought. In the very nature of things it is not to be asserted that the defendant had any knowledge that defendant was making any charge for said services, or that plaintiff was keeping any such an account, since it had no existence in fact until three months before the trial.

Not a single item of it was ever called to the attention of defendant or its board until it was filed with the fourth amended petition. To hold that "it is fairly inferable from the conduct of the parties while this so-called account was accruing that the whole was to be regarded as one, as in the case of a merchant's account against a customer," would be to accede to a palpable misuse and violation not only of the words, but the whole spirit and purpose of the Statute of Limitations. This bill of particulars made up twenty years after the rendition of the services, and at a time when the plaintiff who made it admits and testifies that in the absence of the letters he could not remember the services, and that he only made the account by recalling the facts from those letters; and without being required to produce the letters themselves, is not an account within the meaning of our Statute of Limitations, and no inference is to be or can be drawn that the defendant had agreed that the whole was to be regarded as one. The proof was clear and cogent that plaintiff has assured

the defendant in writing that he was not expecting and did not want any compensation for the advice and services he was constantly tendering as the largest stockholder and if plaintiff is to be allowed to disregard all · of these written assurances, certainly· the defendant is not to be charged by anything in this record with a knowledge of an account which plaintiff was not keeping, especially as it was promptly liquidating every other account which plaintiff did keep against it without the slightest intimation that plaintiff was secretly nurturing another account against it during all these years.

If we are not to repeal the statute by judicial legislation the defendant was clearly entitled to its third and fifth instructions. We have already said and we repeat it that under the allegations of the petition there is no claim for the doing of these services as an entirety or to perform said services for a given time to be paid for thereafter.. On the contrary, giving the allegations of the petition their ordinary meaning, plaintiff was to perform certain services when requested or required and when performed his right of action accrued as to each service. There is nothing in the case to indicate that this company, possessed of ample funds to meet every obligation as it accrued, and organized under a statute requiring it to keep an exact and true account of all of its liabilities for the information of its shareholders, was willingly consenting to the accruing of an account for twenty years, nor does the law imply what the parties never intended.

Giving full assent to the doctrine announced in Ring v. Jamison, and Chadwick v. Chadwick, supra, we cannot deny the defendant the protection of the Statute of Limitations as to all the charges prior to 1891. It is impossible under plaintiff's own testimony to hold there was any express or implied contract that the items of the exhibit should constitute a balance, or a running account, or be deferred for settlement, within

the exception of the statute, section 4278, Revised Statutes 1899. No such inference can be drawn.

This court, in its latest expression on this subject, said, in Wagner v. Electric Company, 177 Mo. l. c. 59, "Where benefits accrue, as they did in this case, as the work progressed, it may well be presumed that the parties contemplated remuneration should be paid from time to time during the progress of construction," and accordingly compensation by the month being sued for, the right of action was held to accrue. In that case the work was an entirety. If the rule there announced must govern, *a fortiori*, it will apply with greater vigor here where there was clearly no time fixed for the ending of the services. This is the well-settled doctrine elsewhere. [Dempsey v. McNabb, 73 Md. 433; Hald v. Ard, 48 Pa. St. 22; Graham v. Stanton, 177 Mass. 321; Kinner v. Tschirpe, 54 Mo. App. 575; Miller v. Lash, 85 N. C. 51; Ennis v. Pullman Car Co., 165 Ill. 161; In re Gardner, 103 N. Y. 533; Bartel v. Mathias, 19 Ore. 482.]

IV. It is not insisted by plaintiff that the fact that defendant is a foreign corporation, the plaintiff himself being a non-resident, deprives defendant of the bar of the statute.

The defendant has throughout its existence as a corporation maintained an office at Neosho in Newton county, in charge of an agent upon whom process could be served and a general judgment obtained. [McNichol v. U. S. Mer. Agency, 74 Mo. 457.]

More than this, it seems to have been the first foreign corporation to file its papers and receive its license to do business in this State under the act of 1891. Section 4273, Revised Statutes 1899, makes no saving of time running against those who are non-resident when an action accrues against them.

We must look to section 4282 to find the exception which would deprive defendant of the benefit of section 4273. But section 4282 is expressly limited to the case

of a debtor who was resident of this State at the time the cause of action accrued and shall afterwards return to this State, and it was so ruled.in Orr v. Wilmarth, 95 Mo. 212. But we see no reason for denying the defendant under the facts of this case the benefit of the statute. The reason of the law is all against a contrary construction. The defendant is a domesticated corporation, engaged in business in this State. By positive statute it must and has kept an office and an agent upon whom service could at all times be obtained. There has never been a time when plaintiff could not have brought his suit, obtained personal service, and a general judgment if he recovered. Under such circumstances the defendant is not in contemplation of law a non-resident within the meaning of the Statute of Limitations. Such is now the prevailing judicial opinion in this country. [Sec. 570, R. S. 1899; sec. 1007, R. S. 1899; 2 Cook on Corporations (4 Ed.), sec. 758; Wall v. Railroad, 29 N. W. (Iowa) 427; Turcott v. Railroad, 101 Tenn. 102; Huss v. Railroad, 66 Ala. 472; Abell v. Penn Life Ins. Co., 18 W. Va. 400; Thompson v. Texas Land & Cattle Co., 24 S. W. 856; Bank v. McKenzie, Federal Cases No. 927; McCabe v. Railroad, 13 Fed. 827; Murfree, Foreign Corp., sec. 247; Hall v. Railroad, 28 Vt. 401; Conn. Mut. Ins. Co. v. Duerson's Exr., 28 Gratt. 630; Lawrence v. Ballou, 50 Cal. 258; Express Co. v. Ware, 20 Wall. 543; Railroad v. Harris, 12 Wall. 65.] Where "a full and perfect judgment" can not be obtained a different rule applies as in New York. [Railroad v. Railroad, 20 Wall. 137.]

V. Among other charges made by Sidway against the company is one for supervising and managing the farm Sandyford after the lease of said farm to Dummit and the sale of the cattle thereon to him, for the years 1891, 1892, 1893, 1894 and 1895. By a written lease and contract, of date July 1, 1889, the company sold, assigned and set over to Dummit all the stock

and property scheduled, and demised and leased said farm to Dummit for a term of years to end December 31, 1893, rent free, for use and improvement as a grass stock farm only, with the privilege of purchasing a portion thereof according to certain specifications. To insure the performance by Dummit of his agreements in said contract and lease, plaintiff Sidway, as surety, joined Dummit in a bond in the penalty of $3,000. The plaintiff selected Dummit and made this contract and lease and was backing Dummit. The purpose of making this lease was to put a stop to disbursements and liabilities on account of running the farm.

The determination to sell the stock was without Sidway's knowledge or consent as clearly appears by a resolution of the board on February 6, 1889. This resolution required that the live stock on the farm all be sold off by June 30, 1889, and all expenditure whatever in running the farm cease absolutely on that date. Sidway testified he received notice of this resolution by cable soon afterwards and immediately went to work to sell the stock. He then received a copy of the resolution.

In the face of his letter to Swan, one of a committee composed of Landale, Swan and Sidway, of March 14, 1889, in which he says: "November 22, 1888, Mr. Martin moved 'that the disposal of the farm he submitted to Mr. Landale, Mr. Swan and Mr. Sidway, which was unanimously agreed to;' thus the whole matter was disposed of. But *without explanationwhatever* they passed a resolution February 5, 1889, just before farming operations for the year begin, instructing me to sell everything by June 30th," he went upon the stand and testified to an arrangement with the board in 1888 which was purposely kept off the records of the company in order to deceive the shareholders not on the board, by which he, Sidway, was to act for the board and make a nominal sale of the cattle to Dummit, and by which he was authorized by the board to advance Dummit

money for and in behalf of the company, while his letters to the various officers demonstrated beyond all cavil that he made no such arrangement with the board, and that the sale to Dummit was an actual and real transaction, and that he was making advancements to Dummit on his own private account and that in the management of the Sandyford farm after July, 1889, he was not in the employment of or serving the company. Thus, on September 16, 1890, plaintiff wrote Littlejohn, managing director:

"I have just answered a letter regarding contract of abrogation which finishes all company matters in my hands and, I hope, that, in future, you will find it sufficient to rely upon the company's manager, who is very competent, except there is some pressing necessity for my services. After the crisis in the company's affairs, it appeared necessary for me to devote a great deal of time to serious complications; and to correcting evils fastened upon the management, and finally, at the request of Mr. Martin and Readman, to relieve the company of its farm, by finding a taker, whom I had to back with the necessary capital. Incidentally, also, I am out no small sum of money, and feel, altogether, that I have, at least, done my part and more."

Sidway to the secretaries of the company, seeking indulgence for Dummit, February 6, 1894:

"I have just returned from Neosho where I met Messrs. Hubbert, Purdy and Dummit, regarding the Sandyford lease. . . . If Dummit was required to close out the stock and give up the place at this time, the result would be ruin to him, for there has been no time within the last ten or twelve months, when such stock could be sold at so much as half its ordinary value. . . . I understood from Mr. Purdy that you had instructed him to require a settlement, and payment of the balance due the company, which, aside from the suggestion already made, I regard impracticable. The occupancy of Sandyford by Mr. Dummit *was the*

*outgrowth of personal effort made by myself,* at the very pressing request of nearly, if not quite all, your directors. The place was losing a large sum of money each year. . . . After casting about for some time, the only possible opportunity that I could find, was to get Dummit to take the property. . . . Finally, after considerable persuasion, he consented, on a *personal promise from me* that if he needed pecuniary assistance, I would give it to him, and that if prices of cattle did not advance, or he met with misfortune, the board would deal very liberally with him. I explained to him their great anxiety to get rid of the cattle, and management of the place, and assured him of assistance and co-operation. . . . Instead of prices advancing, they have declined. . . . In the meantime, I have kept my promise of giving him pecuniary aid, by advancing him money from time to time, until the aggregate is now a little over $2,500, for which I have received no interest and have no security.''

While it seems impossible that the board could have made such arrangement with him in 1888 as he details, if he is to be credited he consented to a scheme by which nominally the burdensome expenditures of maintaining the cattle farm at Sandyford were to be stopped; that the cattle should be reported sold, when in fact they were not sold; in short, he connived at deceiving his fellow shareholders with the story that the burden of this farm was to be taken from their shoulders while in truth it was to continue at an increased cost, the advancement of moneys to carry Dummit and pay plaintiff for continuing to superintend the farm and Dummit. If any court could be brought to believe this story, certainly it would not permit him now to exact commissions from the deceived and deluded shareholders for services rendered in the perpetration of such a shameless scheme. Little wonder that counsel seeing the attitude in which he had placed himself recalled him for the purpose of enabling him to state that

it was not the intention of the committee of the board or himself to mislead or commit a fraud on the shareholders.

The facts speak for themselves: if the board and and he deliberately concealed from the shareholders the true condition of the company, and violated the by-laws which required the board in its annual statements to show the condition of the properties and the liabilities of the company, their conduct and his was highly reprehensible.

VI. We do not think the court erred in not rendering judgment on the verdict in favor of defendant on its counterclaim in the first trial. We think when the defendant obtained a reversal of the judgment on the former appeal and then again pleaded its counterclaim as and for unliquidated damages on this last trial, it was estopped from demanding judgment on the verdict in its favor on the first trial. Moreover, it did not plead that as *res adjudicata*. But we think it was not finally adjudicated.

With the views herein expressed we think the circuit court is sufficiently advised to enable it to try the case according to the principles announced, and accordingly the judgment is reversed and the cause remanded to be proceeded with as herein indicated, adding only that in our opinion it is a proper case to be referred to a careful and competent referee, as it is apparent that the most careful jury could hardly be expected to retain and keep in mind this mass of written evidence covering a period of fifteen or twenty years. All concur.